UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION


BORESCOPES R US,                   ]
                                   ]
        Plaintiff,                 ]
                                   ]
v.                                 ]        No. 3-09-00102
                                   ]        JUDGE HAYNES
                                   ]
1800ENDOSCOPE.COM, LLC             ]
                                   ]
        Defendant.                 ]


M E M O R A N D U M

    Plaintiff, Borescopes R US, a Tennessee sole proprietorship,
filed this action under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a),
the federal trademark statute, against Defendant,
1800Endoscope.com, LLC, a Florida limited liability company,
asserting claims of trademark-infringement and unfair-competition
under federal law, unfair-competition under Tennessee common law,
and violations of the Tennessee Consumer Protection Act, Tenn. Code
Ann. §§ 47-18-101 et seq.

    The parties operate competing businesses selling borescopes
and market and sell their product via the Internet. Plaintiff
operates under the domain name www.borescopesrus.com and Defendant
under the domain name www.borescopes.us.com. Plaintiff alleges, in
essence, that Defendant's use of the domain name
www.borescopes.us.com creates a likelihood of confusion among the
parties' customers.

Before the Court is Defendant's motion for summary judgment (Docket Entry No. 20), contending that Defendant's domain name is generic, is not a protectable trademark and is not likely to cause confusion in the marketplace. In response (Docket Entry No. 28), Plaintiff argues that a material issue of fact exists as to the genericness of Plaintiff's domain name/mark as well as the likelihood of confusion between the parties' use of their respective domain names.

For the reasons set forth below, the Court concludes that the Defendant's motion for summary judgment should be granted because under the applicable law, Plaintiff's domain name is generic and is not entitled to protection under the Lanham Act and Plaintiff has failed to prove a likelihood of confusion.

## I. FINDINGS OF FACT[1]

---

[1]Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. <u>Duchon v. Cajon Co.</u>, 791 F.2d 43, 46 (6th Cir. 1986). As will be discussed <u>infra</u>, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986). Plaintiff filed a response (Docket Entry No. 31) to Defendant's original Statement of Undisputed Facts (Docket Entry No. 11), but did not file a response to Defendant's Statement of Undisputed Facts (Docket Entry No. 22) following discovery. Because Plaintiff did not file a response to Defendant's Statement of Undisputed Facts (Docket Entry No. 22) in accordance with Local Rule 56.01(c), Defendant's proffered statements of facts (Docket Entry No. 22) are undisputed for purposes of summary judgment, pursuant to Local Rule 56.01(g). Because there are not any material factual disputes, this section constitutes findings of fact under Fed. R. Civ. P. 56(d).

2

Plaintiff, Borescopes R Us, has been in the business of marketing the sale and repair of borescopes since 1983 and worldwide, since December 2000. (Docket Entry No. 30, Rodriguez Affidavit at ¶¶ 2, 9). Plaintiff chose the business name Borescopes R Us because the name suggests the nature of the products Plaintiff sells. (Docket Entry No. 22, Defendant's Statement of Undisputed Facts at ¶ 10). A borescope is an instrument using optical fibers for the visual inspection of narrow cavities. Id. at ¶ 2.[2]

Plaintiff began using its domain name www.borescopesrus.com in 2004. (Docket Entry No. 34, Defendant's response to Plaintiff's Statement of Undisputed Facts at ¶ 1). Plaintiff selected the domain name www.borescopesrus.com "for the purpose of product and sales identification," and uses the term "borescope" as the class of products it sells. (Docket Entry No. 22 at ¶¶ 12-13). Approximately, 70% of Plaintiff's business is derived from the Internet. (Docket Entry No. 30 at ¶ 4). Plaintiff's website includes the following text:

_____

[2]Webster's Third New International Dictionary defines "borescope" as "a device usu. consisting of either a prism or a tube with a small mirror at one end and used to insect a cylindrical cavity (as the bore of a gun or the inside of a hydraulic cylinder)." (Docket Entry No. 22, at ¶ 6; Webster's Third New International Dictionary 256 (2002)). Likewise, Random House Unabridged Dictionary defines "borescope" as "an instrument using optical fibers for the visual inspection of narrow cavities, as the bore of a gun." Id. at ¶ 7; Random House Unabridged Dictionary 242 (2d ed.).

3

A Borescope manufacturer since 1983. We stock a full line
of flexible borescopes, rigid borescopes or videoscopes
(video borescope). Our borescope & videoscope line is
designed for borescope inspection of aircraft engines,
powerplants, turbines, law enforcement, castings and like
borescope applications. All of our products are of the
highest quality and offer a full warranty.

**** 

We customize a borescope or videoscope to meet you [sic]
needs.

****

The Borescopes & Accessories Repair Facility was
established in 1985 due to the need for a U.S. Service
and Repair facility that would centralize repair and
overhaul of Borescopes and accessories in one location,
regardless of manufacturer and/or model of borescope. .
. .

(Docket Entry No. 31, Plaintiff's response to Defendant's
Statements of Undisputed Fact, at ¶ 8).

Defendant is an Internet-based business that sells borescopes
and endoscopes for medical, veterinary and industrial use. Id. at
¶ 1. Defendant began using its domain name, www.borescopes.us.com
in January or February 2008. (Docket Entry No. 34 at ¶ 1).
Defendant's website features numerous products labeled generically
as borescopes. (Docket Entry No. 22 at ¶ 14).

The United States Patent and Trademark Office ("USPTO")
records reveal 57 registered and unregistered marks that include
the lowercase term "borescope" in the description of goods or
services. (Docket Entry No. 22 at ¶ 15). A Google search for the
term "borescope" results in approximately 228,000 hits, the results

4

showing use of the term "borescope" as the product Plaintiff and Defendant sell. Id. at ¶ 16. A Nexis search of all news sources for the term "borescope" revealed 2,232 results, the results showing use of the term as the product both parties sell. Id. at ¶ 17.

Defendant has also registered numerous domain names to market its products such as, 1800endoscope.com, 1800endoscope.info, 1800endoscope.net, 1800endoscope.org, bronchofiberscopes.com, colonoscope.net, colonoscope.org, colonoskop.com, e-endoscope.com, endoscope.cc, endoscopy.cc, endoscopic.biz, gastrofiberscope.com, gastrofiberscopes.com, gastroscope.com, gastroscope.org, gastroskop.biz, gastroskope.com, usbendoscope.com, usbendoscopes.com, and usbendoscopy.com. Id. at ¶ 23. Defendant's preference is to register domain names with the most popular extensions, such as ".com" and ".net," when available, because they are the most likely to attract Internet users. Id. at ¶ 25.

Defendant also registered domain names with the domain-name extensions ".us" and ".us.com" or domain names including the phrase "USA," especially where the product name and ".com" is unavailable for a particular product. Id. at ¶ 26. Defendant has registered the domain names bronchoscope.us, endoscope.us.com, endoscopy.us.com, endoscopyusa.com and usaendoscopy.com. Id. at ¶ 28.

5

Defendant was unable to register borescope.com or borescopes.com because those domain names were registered by a third party. Id. at ¶ 29. As a result, Defendant registered the available domain names borescopes.us.com, usbborescope.com, usbborescopes.com and usb-borescope.com with the domain-name registrar Network Solutions. Id. at ¶¶ 30-31.

Network Solutions offers ".us.com" as a featured domain-name extension alongside such extensions as ".com" and ".net". Id. at ¶ 32. The ".us.com" domain name was established in 2000 to offer registrants a new way to register the domain name of their choice with the coveted ".com" extension. Id. at ¶ 33. The addition of ".us" to Defendant's domain name denotes the United States origin of Defendant's goods. Id. at ¶ 35.

Plaintiff has purchased advertisements of its company through Google since 2004. (Docket Entry No. 30 at ¶ 6). According to Plaintiff, Defendant's sponsored Google advertisements have appeared next to or near Plaintiff's Google advertisements on search results, and on a number of occasions Plaintiff has received telephone calls from clients who have mistakenly called Plaintiff's business when trying to reach Defendant's offices. Id. at ¶¶ 7-8.

## II. CONCLUSIONS OF LAW

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee

6

Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*, so long as the opposing party was on notice that [he] had to come forward with all of [his] evidence." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 326 (1986); <u>accord</u>, <u>Routman v. Automatic Data Processing, Inc.</u>, 873 F.2d 970, 971 (6th Cir. 1989).

In <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.
>
> <u>As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.</u> Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

`genuine issue for trial.'" Matsushita Electrical Industrial Co.
v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations
omitted).

A motion for summary judgment is to be considered after
adequate time for discovery. Celotex, 477 U.S. at 326 (1986).
Where there has been a reasonable opportunity for discovery, the
party opposing the motion must make an affirmative showing of the
need for additional discovery after the filing of a motion for
summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th
Cir. 1989). But see Routman v. Automatic Data Processing, Inc.,
873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment
motion as to the required showing of the respective parties, as
described by the Court in Celotex:

> Of course, a party seeking summary judgment always bears
> the initial responsibility of informing the district
> court of the basis for its motion, and identifying those
> portions of "the pleadings, depositions, answers to
> interrogatories, and admissions on file, together with
> the affidavits, if any," which it believes demonstrate
> the absence of a genuine issue of material fact. . . .
> [W]e find no express or implied requirement in Rule 56
> that the moving party support its motion with affidavits
> or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears
the burden of satisfying Rule 56(c) standards." Martin v. Kelley,
803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden
is to show "clearly and convincingly" the absence of any genuine

8

issues of material fact. <u>Sims v. Memphis Processors, Inc.</u>, 926
F.2d 524, 526 (6th Cir. 1991)(quoting <u>Kochins v. Linden-Alimak,</u>
<u>Inc.</u>, 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant
has met its initial burden of `demonstrat[ing] the absence of a
genuine issue of material fact,' the nonmoving party then `must set
forth specific facts showing that there is a genuine issue for
trial.'" <u>Emmons</u>, 874 F.2d at 353 (quoting <u>Celotex</u> and Rule 56(e)).

Once the moving party meets its initial burden, the United
States Court of Appeals for the Sixth Circuit warned that "the
respondent must adduce more than a scintilla of evidence to
overcome the motion [and]. . . must `present affirmative evidence
in order to defeat a properly supported motion for summary
judgment.'" <u>Street v. J.C. Bradford & Co.</u>, 886 F.2d 1472, 1479
(6th Cir. 1989)(quoting <u>Liberty Lobby</u>). Moreover, the Court of
Appeals explained that:

> The respondent must "do more than simply show that there
> is some metaphysical doubt as to the material facts." 
> Further, "[w]here the record taken as a whole could not
> lead a rational trier of fact to find" for the
> respondent, the motion should be granted. The trial
> court has at least some discretion to determine whether
> the respondent's claim is "implausible."

<u>Street</u>, 886 F.2d at 1480 (citations omitted). <u>See also</u> <u>Hutt v.</u>
<u>Gibson Fiber Glass Products</u>, 914 F.2d 790, 792 (6th Cir. 1990) ("A
court deciding a motion for summary judgment must determine
`whether the evidence presents a sufficient disagreement to require

9

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'") (quoting Liberty Lobby).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party</u>.
>
> . . . .
>
> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits</u>. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented</u>. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict --</u> "whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added).

It is likewise true that:

In ruling on [a] motion for summary judgment, the court must construe the evidence in its most favorable light in

10

favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: `The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986).

The Sixth Circuit further explained the District Court's role in evaluating the proof on a summary judgment motion:

A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establish a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).

Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). Here, the parties have given some references to the proof upon

11

which they rely.  Local Rules 56.01(b)-(d) require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

> 1.    Complex cases are not necessarily inappropriate for summary judgment.
>
> 2.    Cases involving state of mind issues are not necessarily inappropriate for summary judgment.
>
> 3.    The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.
>
> 4.    This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.
>
> 5.    A court should apply a federal directed verdict standard in ruling on a motion for summary judgment.  The inquiry on a summary judgment motion or a directed verdict motion is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."
>
> 6.    As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.
>
> 7.    The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

12

8.    The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

9.    The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10.   The trial court has more discretion than in the "old era" in evaluating the respondent's evidence.  The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts."  Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted.   The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1479-80 (citations omitted).

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

"The Sixth Circuit has held that both trademark infringement and unfair competition claims require courts to determine whether there is a likelihood of confusion regarding the source of the products and, therefore, these claims can be analyzed together."

13

_General Conf. Corp. of Seventh-Day Adventists v. McGill_, 624 F.
Supp.2d 883, 891 (W.D. Tenn. 2008) (citing _AutoZone, Inc. v. Tandy_
_Corp._, 373 F.3d 786, 791 (6th Cir. 2004)). Likewise, Tennessee
unfair competition claims, common law infringement claims and
claims for violation of the Tennessee Consumer Protection Act are
analyzed under the same standards as federal claims. _Id_. (citing
_Microsoft Corp. v. Sellers_, 411 F. Supp.2d 913, 920 (E.D. Tenn.
2006)). Thus, the Court decides both federal and state law claims.

Plaintiff asserts claims under 15 U.S.C. §§ 1114 and 1125(a)
of the Lanham Act. Section 1114 pertains to registered trademarks
while § 1125 pertains to unregistered trademarks. Because
Plaintiff does not allege nor was any evidence presented
establishing that Plaintiff owns a registered trademark, the Court
analyzes Plaintiff's claims under § 1125(a).

Section 43(a)of the Lanham Act, 15 U.S.C. § 1125(a), provides
in pertinent part:

> (a)(1) Any person who, on or in connection with any goods
> or services, or any container for goods, uses in commerce
> any word, term, name, symbol, or device, or any
> combination thereof, or any false designation of origin,
> false or misleading description of fact, or false or
> misleading representation of fact, which—
>
>> (A) is likely to cause confusion, or to cause
>> mistake, or to deceive as to the affiliation,
>> connection, or association of such person with
>> another person, or as to the origin,
>> sponsorship, or approval of his or her goods,
>> services, or commercial activities by another
>> person, . . .

14

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a). The intent of the Act is set forth in Section 45 thereof, 15 U.S.C. § 1127, which provides, "The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce . . . and to protect persons engaged in such commerce against unfair competition . . . ."

To prove a claim for infringement under 15 U.S.C. § 1125(a), a plaintiff must show the following: (1) ownership of a specific mark in connection with the specific good or services it offers; (2) continuous use of the mark; (3) establishment of secondary meaning if the mark is descriptive; and (4) a likelihood of confusion among consumers due to the contemporaneous use of the parties' marks. Homeowners Group, Inc. v. Home Mktg Specialists, Inc., 931 F.2d 1100, 1105 (6th Cir. 1991).

The critical issues are "whether [Plaintiff's] mark is protectable, and if so, whether there is a likelihood of confusion as a result of the would-be infringer's use of the mark. Tumblebus Inc. v. Cranmer, 399 F.3d 754, 761 (6th Cir. 2005). The "Lanham Act offers protection against infringement of both registered and unregistered marks." DeGidio v. West Group Corp., 355 F.3d 506, 509 (6th Cir. 2004).

15

"The essence of a trademark is a designation in the form of a distinguishing name, symbol or device which is used to identify a person's goods and distinguish them from the goods of another." ETW Corp. v. Jireh Publ'g, Inc., 332 F.3d 915, 921 (6th Cir. 2003). "'The existence and extent of trademark protection for a particular term depends on that term's inherent distinctiveness. Courts have identified four general categories of terms: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful.'" Bath & Body Works, Inc. v. Luzier Personalized Cosmetics, Inc., 76 F.3d 743, 748 (6th Cir. 1996) (citation omitted).

"The strength of the mark is a factual determination of the mark's distinctiveness. The more distinct a mark, the more likely is the confusion resulting from its infringement, and therefore, the more protection is due." Frisch's Restaurants, Inc. v. Shoney's, Inc., 759 F.2d 1261, 1264 (6th Cir. 1985)(Frisch's II). "A mark is strong and distinctive when 'the public readily accepts it as the hallmark of a particular source;' such acceptance can occur when the mark is unique, when it has received intensive advertisement, or both." Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center, 109 F.3d 275, 280 (6th Cir. 1997). (citations omitted).

A generic mark is the weakest mark and is not entitled to trademark protection. Champions Golf Club, Inc. v. The Champions Golf Club, Inc., 78 F.3d 1111, 1117 (6th Cir. 1996); Nartron Corp.

16

v. STMicroelectronics, Inc., 305 F.3d 397, 404 (6th Cir. 2002) ("A generic term can never function as a trademark."). It is used commonly to describe the type of product or service and not the producer. Id. Examples of generic marks are "aspirin," "escalator," and "light beer." Id. In Gaylord Entertainment Co. v. Gilmore Entertainment Group, LLC., 187 F. Supp.2d 926 (M.D. Tenn. 2001), this Court explained further:

> A generic term does not identify and distinguish the product of only one seller. See 2 McCarthy on Trademarks, § 12.1 (4th Ed.) (hereinafter " McCarthy "). Thus, the original maker of the product or the first user of the term cannot acquire an exclusive right to use the term. The policy behind denying trademark protection to generic names is that "[g]eneric names are regarded by the law as free for all of us to use. They are in the public domain." McCarthy, § 12.2.
>
> The Sixth Circuit has stated that "whether a name is generic is a question of fact." Bath & Body Works, Inc., 76 F.3d at 748. A trademark that has been federally registered is presumed to be not generic and the defendant must overcome the presumption. Id. (citing McCarthy, § 12.2). However, "if a trademark is not federally registered, once the defendant raises genericness as a defense, plaintiff must prove lack of genericness." Id. The appropriate test to determine whether a mark is generic is "whether the public perceives the term primarily as the designation of the article." Id. (quoting Blinded Veterans Ass'n v. Blinded Am. Veterans Found., 872 F.2d 1035, 1039 (D.C.Cir.1989)). See also 15 U.S.C. § 1064 (1999) (the test for determining if a mark has become generic is the "primary significance of the registered mark to the relevant public"). In making a determination of whether a mark is generic, "courts consider such evidence as dictionary definitions, competitors' use, plaintiffs' use, media usage, national testimony by people in the trade, and consumer surveys." Nat'l Baseball Hall of Fame v. All Sports Promotion Group, Inc., 2001 U.S. Dist. LEXIS 1592, *12 (S.D.N.Y. 2001).

<u>Id</u>. at 936-37.

Plaintiff does not dispute that the term "borescope" used in connection with the sale of borescopes is a generic term. (Docket Entry No. 30 at ¶ 5; Docket Entry No. 22 at ¶ 4). Nor does Plaintiff dispute that the portion of Defendant's domain name "www." or ".com" is generic. (Docket Entry No. 25, Declaration of Amy Everhart, Exhibit 11, Interrogatory Responses at ¶¶ 14-15). Instead Plaintiff argues that "borescopesrus" is not generic when used in Plaintiff's domain name and that the inclusion of ".us" as part of Defendant's web address www.borescopes.us.com creates a strong likelihood of confusion among potential customers because of the similarity of the parties' domain names. Plaintiff contends that Defendant's use of www.borescopes.us.com benefits from Plaintiff's reputation in the borescope industry. Plaintiff argues that Defendant's sponsored Google advertisements have appeared next to or near Plaintiff's Google advertisements on search results and Plaintiff has received telephone calls from clients who mistakenly called Plaintiff's business when trying to reach Defendant's offices. (Docket Entry No. 30 at ¶¶ 7-8). Plaintiff chose the name Borescopes R Us because the name suggests the name of the products that Plaintiff sells.

The term "borescopes" also appears in dictionaries in lower case. If a term appears "in a standard dictionary in lower case, this would be powerful evidence that the term was generic, because

18

nouns and other nominatives listed in dictionaries, save for the occasional proper name, denote kinds rather than specific entities ("dog," not "Fido")." Door Systems, Inc. v. Pro-Line Door Systems, Inc., 83 F.3d 169, 171 (7th Cir. 1996). Plaintiff also admits that "www." and ".com" are generic, but contends that the addition of ".us," in combination with the domain name as a whole, renders the domain name protectable as a trademark.

"[E]ach website on the internet has a domain name, 'which is an identifier somewhat analogous to a telephone number or a street address.'" Johnny's Fine Foods, Inc. v. Johnny's Inc., 286 F. Supp.2d 876, 889 (M.D. Tenn. 2003) (citation omitted). "Domain names,- e.g., bettyandnicks.com-consist of at least two groups of alphanumeric characters, each known as a string, separated by a period or dot. The last string-the farthest to the right-denotes the top-level domain. The second-to-last string is the second-level domain name and identifies the person's or organization's Internet computer site." Thomas v. Network Solutions, Inc., 176 F.3d 500, 503 (D.C. Cir. 1999).

> More than 200 national, or country-code, top-level domains- e.g., ".us" for the United States, ".pa" for Panama, ".uk" for the United Kingdom, and so on-are administered by their corresponding governments or by private entities with the government's permission. A small set of generic top-level domains carry no national identifier, but denote the intended function of that portion of the domain space: ".com" for commercial users; ".org" for non-profit organizations; ".net" for network service providers; ".edu" for educational institutions; ".gov" for United States government institutions; ".mil"

19

for United States military institutions; and ".int" for
international institutions.

Id.

In determining whether a domain name is entitled to
protection, the USPTO

> takes the position that the Top Level Domain indicator
> ".com" (or any of the other top level domain indicators)
> adds nothing to the distinctiveness of the designation as
> a trademark or service mark. The author agrees that a top
> level domain designation has no ability to distinguish
> one source from another and thus, has no trademark
> significance. Such a top level domain indicator has no
> source indicating significance and cannot serve any
> trademark purpose. The same is true of other
> nondistinctive modifiers used in domain names, such as
> "http://www" and "html." The PTO analogizes a TLD to a
> nondistinctive part of a telephone number such as the
> "800" part of a toll free telephone number. The average
> person that uses the Internet is aware of the standard
> format for a domain name and knows that the designations
> "http," "www," and a TLD like ".com" are a part of every
> Internet domain name and identifier. Thus, the TLD ".com"
> functions in the world of cyberspace much like the
> generic indicators "Inc.," "Co.," or "Ltd." placed after
> the name of a company.
>
> A top level domain indicator like ".com" does not turn an
> otherwise unregisterable designation into a distinctive,
> registrable trademark. Thus, for example, adding a ".com"
> to a generic term, such as <bankingnews.com> would not
> change the basic generic nature and the composite will
> probably be found generic and unregisterable for the
> service of providing information in the field of banking.

1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition
§ 7:17.50 (4th ed. 2010) (footnotes omitted).

In DeGidio, the plaintiff, a registrant of the domain name
lawoffices.net, attempted to obtain trademark protection for the
mark LAWOFFICES. 355 F.3d at 508. The plaintiff did not own a

20

federal registration for the lawoffices.net designation. The defendant owned the domain name lawoffice.com. _Id_. The district court found that the plaintiff's mark was, at best, descriptive and devoid of secondary meaning. _Id_. at 510. On appeal the Sixth Circuit affirmed. _Id_. at 514. The Sixth Circuit also noted that the TLD ".net" had no trademark significance. _Id_. at 507 n.1.

Thus, Defendant argues that the combination of a mark and the domain-name extension does not produce a new meaning for purposes of determining protectability. Defendant contends that neither the "www." nor the ".us.com" portions of Defendant's domain name serves any source-indicating function and the terms do not have any trademark significance and, when added to "borescopes," do not convert www.borescopes.us.com to a protectable mark. The Court agrees.

The online dictionary www.dicitonary.com defines ".us" as the abbreviation for the United States of America in Internet addresses. (Docket Entry No. 25, Exhibit M). One registrar, NamesDirect.com, was approved in 2000 to offer the domain name extension ".us.com." _Id_., Exhibit I. The registrar explains that the names were developed "to offer clients a new way to register their domain name of choice, while still maintaining the coveted .com extension." _Id_. Another registrar, Register.com, describes the "us.com" extension as "The .com alternative for USA based sites." _Id_., Exhibit J.

21

Based on the authorities cited above, the Court concludes that "us.com" is a valid domain name extension, but Plaintiff cannot establish that the addition of this valid domain name extension converts the term "borescopes" into a protectable mark. Plaintiff admits to the genericness of www.borescopes.us.com except for the ".us" extension. Yet, ".us" is a valid domain name extension. Defendant was unable to register borescope.com or borescopes.com because those domain names were registered by a third party, and as a result, Defendant validly registered wwww.borescopes.us.com with Network Solutions that offers ".us.com" as a featured domain-name extension. Perhaps, if Defendant had the domain name www.borescopesrus.us.com or www.borescopeasareus.com then Plaintiff would have a better argument, but that is not the case here.

Plaintiff asserts that a dot and one letter ("r") are the only differences between the parties' domain names at issue and that creates striking similarities to cause a likelihood of confusion. In support Plaintiff cites <u>General Conf.</u>, 624 F. Supp.2d at 898-99. However, that case is distinguishable because there the contested marks had been federally registered and were deemed incontestable. <u>Id</u>. at 895-96. Also, that case did not involve the question of generic domain name extensions converting an otherwise generic term into a protectable mark.

Plaintiff also cites <u>Specialty Vehicle Acquisition Corp. v.</u> <u>American Sunroof Corp.</u>, No. 07-13887, 2008 WL 2795834 (E.D. Mich

22

July 18, 2008). Plaintiff asserts that in <u>Specialty</u> the defendant's addition of "usa" to the domain name was not enough to eliminate the likelihood of confusion in the domain names of two market competitors, nor was the use of ".com." Again, Plaintiff's reliance on <u>Specialty</u> is misplaced as that case did not involve a generic mark. In <u>Specialty</u> the defendant used the domain name <ASCusa.com>. <u>Id</u>. at *1. However, the plaintiff federally registered the ASC mark, making the mark incontestable and relatively strong. <u>Id</u>. at *3. Further, the defendant incorporated the plaintiff's entire mark in the defendant's domain name.

However, this conclusion does not end the inquiry. In <u>Gaylord Entertainment Co.</u>, this Court held that, "a judicial determination of genericness does not preclude relief under the Lanham Act for unfair competition" as relief may still be available under the Lanham Act on a theory of passing off. 187 F. Supp. 2d at 950-51. "'Although genericness prevents a word or phrase from attaining trademark protection, it does not prevent a court from determining whether a competitor's later use of that word or phrase is unfair.'" <u>Id</u>. at 950 (citing <u>Forschner Group, Inc. v. Arrow Trading Co., Inc.</u>, 904 F. Supp. 1409, 1416 (S.D.N.Y. 1995)). As the <u>Forschner</u> Court explained, "To be protected against unfair competition . . . a generic term must have acquired some secondary meaning." 904 F. Supp. at 1416 n.8. Relief is available under the Lanham Act regardless of how a mark became generic, whether the

23

term was formerly protectable but became generic or was generic *ab initio*. <u>Gaylord Entertainment Co.</u>, 187 F. Supp.2d at 951. "A party, however, cannot obtain relief under the Lanham Act for a claim of unfair competition which is 'predicated solely on the competing use of a generic term.'" <u>Id</u>. at 951 (citing <u>Forschner</u>, 904 F. Supp. at 1417.). To establish a claim on a theory of passing off, a party must prove "'two essential elements: (1) an association of origin by the consumer between the mark and the first user, and (2) a likelihood of consumer confusion when the mark is applied to the second user's good.'" <u>Id</u>. (quoting <u>Forschner</u>, 904 F. Supp. at 1417.).

<u>McCarthy on Trademarks</u> includes an analysis of <u>Forschner</u>, commenting:

> In the author's opinion, in order to obtain some form of relief on a "passing off" claim, the user of a generic term must prove some false or confusing usage by the newcomer *above and beyond* mere use of the generic name. This might include, for example, packaging or advertising words or graphics which, in combination with the generic term, cause mistake or confusion as to source.

2 <u>McCarthy on Trademarks</u>, § 12:48 (4th ed. 2010) (emphasis in original). <u>See</u> <u>also</u> <u>BellSouth Corp. v. White Directory Publishers, Inc.</u>, 42 F. Supp.2d 598, 613-14 (M.D.N.C. 1999) (refusing to apply passing off theory, stating "The Fourth Circuit never has employed the doctrine of 'passing off' to proscribe the use of a purported trademark that it held to be generic . . . . Those courts which do apply the doctrine, however, emphasize that its purpose is to

24

eliminate fraud and to prevent new entrants in a market once dominated by a monopolist from using the generic mark for the product in a manner confusingly similar to that of the monopolist.").

Defendant contends that Plaintiff's claims are entirely predicated on Defendant's use of the domain name www.borescopes.us.com. Defendant cites Plaintiff's Complaint where Plaintiff asserts that a likelihood of confusion in the marketplace is created and exacerbated by the similarity of the two domain addresses; that Plaintiff's damages are enhanced because of the parties' similar markets and marketing approaches, namely the use of the Internet; and that the use of Defendant's domain name benefits from Plaintiff's reputation. (Docket Entry No. 1, Complaint at ¶¶ 5, 7-8).

Defendant argues that there is no evidence that Defendant unfairly competed in its activities related to the adoption of its domain name, promotion of its services or solicitation of its customers other than using a generic term in its domain name. See Gaylord Entertainment Co., 187 F. Supp.2d at 951 (stating that even if the term "Opry" were generic, based on the evidence presented a trier-of-fact could determine that the defendant engaged in unfair competition in its activities related to the adoption, promotion, and solicitation sales of the disputed mark so long as the claim was not predicated solely on the defendant's use of the term

25

"Opry"). Defendant contends that Plaintiff merely objects to the use of Defendant's domain name and that cannot be the basis for a Lanham Act passing off claim. Defendant also contends that Plaintiff never had a right to monopolize the term "borescope" and this is not an instance where Plaintiff is a rightful monopolist that needs protection from new entrants to the market.

Plaintiff has presented evidence that it received occasional telephone calls from clients searching for Defendant's offices. (Docket Entry No. 30 at ¶ 8). Because likelihood of confusion is the essence of an unfair competition claim, the Court will examine the eight factors adopted by the Sixth Circuit in determining whether a likelihood of confusion exists. See Bird v. Parsons, 289 F.3d 865, 877 (6th Cir. 2002) ("Generally speaking, the key question in cases where a plaintiff alleges trademark infringement and unfair competition is whether the defendant's actions create a likelihood of confusion as to the origin of the parties' goods or services."). These factors are as follows:

 1. strength of the plaintiff's mark;

 2. relatedness of the goods;

 3. similarity of the marks;

 4. evidence of actual confusion;

 5. marketing channels used;

 6. likely degree of purchaser care;

 7. defendant's intent in selecting the mark; and

8. likelihood of expansion of the product lines.

Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc., 670 F.2d 642, 648 (6th Cir. 1982)(Frisch's I).

These eight factors serve simply as a guide. Their use implies no mathematical precision, and a party need not show that all, or even most, of the factors listed are present in any particular case to be successful. Wynn Oil Co. v. Thomas, 839 F.2d 1183, 1186 (6th Cir. 1988)(Wynn I). Indeed, "[e]ach case presents its own complex set of circumstances and not all of these factors may be particularly helpful in any given case." Homeowners Group, 931 F.2d at 1107. "The ultimate question remains whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." Id. No one factor is dispositive, "but the factors guide us in our ultimate determination." Kellogg Co. v. Toucan Golf, Inc., 337 F.3d 616, 623 (6th Cir. 2003).

A. STRENGTH OF MARK

"[T]he strength of the mark alludes to the mark's distinctiveness, or its tendency to identify goods sold under the mark with a particular source because of: (1) the intrinsic nature of the designation, and (2) the context in which it is used." Express, Inc. v. Sears, Roebuck & Co., 840 F. Supp. 502, 507 (S.D. Ohio 1993). As explained above, the Court has determined Plaintiff's mark to be generic and is therefore very weak.

27

Therefore, the Court concludes that this factor weighs in favor of Defendant.

## B. RELATEDNESS OF THE GOODS

The Sixth Circuit has articulated three categories which cases generally fit into:

> First, if the parties compete directly by offering their goods or services, confusion is likely if the marks are sufficiently similar; second, if the goods or services are somewhat related but not competitive, the likelihood of confusion will turn on other factors; third, if the goods or services are totally unrelated, confusion is unlikely.

Daddy's Junky Music, 109 F.3d at 282.

Here the goods are related since both parties sell the same class of products labeled generically as borescopes. Accordingly, this factor weighs in Plaintiff's favor.

## C. SIMILARITY OF THE MARKS

"To analyze properly the similarity of marks, a court must examine the 'pronunciation, appearance and verbal translation of competing marks.'" Gaylord Entertainment Co., 187 F. Supp.2d at 947 (quoting Wynn Oil, 839 F.2d at 1188). Further, "courts must view marks in their entirety and focus on their overall impressions, not individual features." Daddy's Junky Music, 109 F.3d at 283. "A court must determine whether a given mark would confuse the public when viewed alone, and not in a side-by-side comparison." Gaylord Entertainment Co., 187 F. Supp.2d at 947.

> The USPTO takes the position that the Top Level Domain indicator ".com" (or any of the other top level domain

28

indicators) adds nothing to the distinctiveness of the designation as a trademark or service mark. The author agrees that a top level domain designation has no ability to distinguish one source from another and thus, has no trademark significance. Such a top level domain indicator has no source indicating significance and cannot serve any trademark purpose.

1 <u>McCarthy on Trademarks</u>, § 7:17.50 (4th ed. 2010) (footnotes omitted); <u>see</u> <u>Degidio</u>, 355 F.3d at 507 n.1 (noting that the TLD ".net" "has no trademark significance"); <u>Image Online Design, Inc.</u> <u>v. Core Ass'n</u>, 120 F. Supp. 2d 870, 878 (C.D. Cal. 2000) ("Not once has any court imputed trademark rights to a gTLD. In fact, rather than look at a gTLD to determine trademark rights, the Ninth Circuit and others ignore the TLD as though it were invisible next to the second level domain name in an infringement action."). Similarly,

> The presence in both conflicting marks or trade names of commonly used generic indicators such as "Inc.," "Co." or "Ltd." cannot either add to or lessen any likelihood of confusion that would otherwise exist. . . . Another example is the presence in conflicting domain name marks of a global top level domain indicator, such as ".com." The fact that conflicting marks share the ".com" suffix is irrelevant because ".com" is a generic locator for domain names of many Web sites.

4 <u>McCarthy on Trademarks</u>, § 23:49 (4th ed. 2010) (footnotes omitted).

As determined earlier by the Court, "us.com" is a valid domain name extension. Thus, ignoring the domain extensions, Plaintiff's domain name is borescopesrus and Defendant's is simply borescopes. The parties' use of the term "borescopes" in their domain name are

obviously similar since the term generically describes the class of product each sells. However, the inclusion of "rus" in Plaintiff's domain name sufficiently distinguishes the two domain names. Accordingly, the Court concludes that this factor does not weigh in Plaintiff's favor.

D. EVIDENCE OF ACTUAL CONFUSION

Evidence of actual confusion is the best evidence of likelihood of confusion. <u>Daddy's Junky Music</u>, 109 F.3d at 284. However,

> a lack of such evidence is rarely significant, and the factor of actual confusion "is weighted heavily only when there is evidence of past confusion, or perhaps, when the particular circumstances indicate such evidence should have been available." Nonetheless, isolated instances of actual confusion after a significant period of time of concurrent sales or extensive advertising do not always indicate an increased likelihood of confusion and may even suggest the opposite.

<u>Id</u>. (citations omitted); <u>Sun Banks, Inc. v. Sun Fed. Savs. & Loan</u>, 651 F.2d 311, 319 (5th Cir. 1981) (nineteen incidents reported over three years held insufficient).

> Perhaps as important as the number of instances of confusion are the kinds of persons confused and degree of confusion. "Short-lived confusion or confusion of individuals casually acquainted with a business is worthy of little weight," while chronic mistakes and serious confusion of actual customers are worthy of greater weight.

<u>Homeowners Group</u>, 931 F.2d at 1110 (citation omitted); <u>see</u> <u>Champions Golf Club</u>, 78 F.3d at 1120 (recognizing that it was significant that in four instances of actual confusion the confused

30

individuals who were knowledgeable about the service but were unclear about which service was which, the Court stated, "On the other hand, four incidents is not a considerable quantum of evidence of actual confusion, and minimal or isolated instances of actual confusion are, obviously, less probative than a showing of substantial actual confusion."); <u>Sun Banks</u>, 651 F.2d at 319 ("In determining the likelihood of confusion . . . a court must consider all of the evidence, including countervailing circumstances which lessen the impact of asserted instances of confusion.") (citing <u>First Southern Fed. Sav. v. First Southern Sav.</u>, 614 F.2d 71 (5th Cir. 1980) (finding that there was no substantial likelihood of confusion even though actual confusion existed on several occasions)); <u>McDonald's Corp. v. Shop at Home, Inc.</u>, 82 F. Supp.2d 801, 808-09 (M.D. Tenn. 2000) ("Evidence of actual confusion may be dismissed as *de minimus* if it is of limited scope.") (citing <u>McCarthy on Trademarks</u>, § 23:14 at 23-43 (4th ed.1999)) ("Evidence of the number of instances of actual confusion must be placed against the background of the number of opportunities for confusion before one can make an informed decision as to the weight to be given the evidence.").

Of course, a court must "[b]ear[] in mind that a successful Lanham Act plaintiff only must show a sufficient *potential* of confusion, not actual confusion." <u>Daddy's Junky Music</u>, 109 F.3d at 284 (emphasis in original).

31

Adrian Rodriguez, the owner of Borescopes R Us, states that on a number of occasions he has received telephone calls from clients who have mistakenly called his business when searching for Defendant's offices. (Docket Entry No. 30 at ¶ 8). However, Plaintiff does not elaborate as to the number of telephone calls received, the nature of the calls or over what time period these calls were placed. Moreover, Plaintiff does not even highlight this point in its brief. In fact Plaintiff states that the second and third factors, i.e. the relatedness of the goods and similarity of the marks, "are especially pertinent" and that "similarity is the main focus in the instant case, given that the domain names at issue are so similar in appearance and presentation." (Docket Entry No. 33 at 3).

While Plaintiff has presented some evidence of actual confusion, the Court concludes these vague instances of confusion minimally favor Plaintiff.

### E. MARKETING CHANNELS USED

The fifth factor considers how and to whom the respective goods of the parties are sold. Homeowners Group, 931 F.2d at 1110. "Obviously, dissimilarities between the predominant customers of a plaintiff's and defendant's goods or services lessens the possibility of confusion, mistake, or deception." Id. "[A] court must determine whether the marketing approaches employed by each party resemble each other." Daddy's Junky Music, 109 F.3d at 285.

Both parties sell borescopes and rely extensively on Internet sales. Accordingly, this factor weighs in Plaintiff's favor.

## F. LIKELY DEGREE OF PURCHASER CARE

"In general, the less care that a purchaser is likely to take in comparing products, the greater the likelihood of confusion." Wynn Oil Co. v. American Way Serv. Corp., 943 F.2d 595, 602 (6th Cir. 1991)(Wynn II). In Homeowners Group, the Court stated:

> Generally, in assessing the likelihood of confusion to the public, the standard used by the courts is the typical buyer exercising ordinary caution. However, when a buyer has expertise or is otherwise more sophisticated with respect to the purchase of the services at issue, a higher standard is proper. Similarly, when services are expensive or unusual, the buyer can be expected to exercise greater care in her purchases. When services are sold to such buyers, other things being equal, there is less likelihood of confusion.

Id. at 285. "The ultimate significance of a given degree of care, however, often will depend upon its relationship with the other seven factors." Daddy's Junky Music, 109 F.3d at 285.

There is no evidence in the record as to this factor. Accordingly, this factor favors neither party.

## G. DEFENDANT'S INTENT IN SELECTING THE MARK

"If a party chooses a mark with the intent of causing confusion, that fact alone may be sufficient to justify an inference of confusing similarity." Homeowners Group, 931 F.2d at 1111.

> Intent is relevant because purposeful copying indicates that the alleged infringer, who has at least as much knowledge as the trier of fact regarding the likelihood

33

> of confusion, believes that his copying may divert some
> business from the senior user. Direct evidence of
> intentional copying is not necessary to prove intent.
> Rather, the use of a contested mark with knowledge of the
> protected mark at issue can support a finding of
> intentional copying. Further, the extensive advertising
> and long-term use of a protected mark can create a
> presumption that the alleged infringer knew of the
> protected mark.

Daddy's Junky Music, 109 F.3d at 286 (citations omitted). Of

course, a Court must be mindful that intent "is an issue whose

resolution may benefit only the cause of a senior user, not of an

alleged infringer." Id. at 287.

The evidence reveals that Defendant was unable to register

borescope.com or borescopes.com because those domain names were

already registered by a third party. Moreover, as previously

determined by the Court, ".us.com" is a valid domain name

extension, and Plaintiff admits that "www." and ".com" are generic

as well as the term "borescopes." Further, Defendant also

registered the available domain names usbborescope.com,

usbborescopes.com and usb-borescope.com. Thus, the Court concludes

that there is no evidence that Defendant chose borescopes.us.com

with the intent of causing confusion. Accordingly, this factor

does not weigh in Plaintiff's favor.

### H. LIKELIHOOD OF EXPANSION OF THE PRODUCT LINES

> "[A] 'strong possibility' that either party will expand
> his business to compete with the other or be marketed to
> the same consumers will weigh in favor of finding that
> the present use is infringing." A geographic expansion or
> an increase in the types of products or services offered
> can be relevant. A finding that the parties will not

34

expand their markets significantly, however, "does not address" the ultimate issue of likelihood of confusion. "Thus, as with the seventh factor, an affirmative finding will provide a strong indication that the parties' simultaneous use of the marks is likely to lead to confusion, while a negative finding is not a strong indication to the contrary."

<u>Id</u>.

There is nothing in the record regarding the parties' expansion of product lines. In any event, both parties are in the business of selling borescopes and use the Internet in selling their product. Accordingly, this factor is irrelevant to the likelihood of confusion analysis. <u>Victoria's Secret Stores v. Artco Equipment Co., Inc.</u>, 194 F. Supp.2d 704, 728 (S.D. Ohio 2002); <u>Future Lawn, Inc. v. Maumee Bay Landscape Contractors, L.L.C.</u>, 542 F.Supp.2d 769, 779 (N.D. Ohio 2008).

On balance, the eight factors that this Court must consider weigh in favor of finding against a likelihood of confusion.

### III. CONCLUSION

Accordingly, Defendant's motion for summary judgment (Docket Entry No. 20) should be granted.

An appropriate Order is filed herewith.

**ENTERED** this the _26th_ day of July, 2010.

WILLIAM J. HAYNES, JR.
United States District Judge

35