UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

BORESCOPES R US,                )
                                )
        Plaintiff,               )
                                )
v.                              )    No. 3:09-0102
                                )    JUDGE HAYNES
                                )
1800ENDOSCOPE.COM, LLC           )
                                )
        Defendant.               )

## **MEMORANDUM**

Plaintiff, Borescopes R US, a Tennessee sole proprietorship, filed this action under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), the federal trademark statute, against Defendant, 1800Endoscope.com, LLC, a Florida limited liability company, asserting claims of trademark-infringement and unfair-competition under federal law, unfair-competition under Tennessee common law, and violations of the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. §§ 47-18-101 et seq. After discovery and motion for summary judgment, the Court granted the Defendant's motion for summary judgment (Docket Entry No. 20).

Before the Court is Defendant's motion for attorney's fees and costs (Docket Entry No. 38) to which Plaintiff filed a response (Docket Entry No. 42). Defendant contends that Plaintiff's claims were objectively unfounded at the time of filing its complaint and that Plaintiff should have recognized the baselessness of its claims. Defendant contends that Plaintiff admitted that the term "borescope" and the domain-name extensions ".www" and ".com" were generic, yet argued that adding the common domain-name extension ".us" converted the domain name to a protectable term.

In response, Plaintiff contends that the "exceptional" standard for an award of attorney's fees does not apply here and that Defendant's bare assertions of Plaintiff's intent in filing this action are only conclusions as to Plaintiff's pre-judgment motives.

A court "in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). Where a defendant is the prevailing party, a case is "exceptional" where a plaintiff brings an "oppressive" action. Eagles, Ltd. v. American Eagle Foundation, 356 F.3d 724, 728 (6th Cir. 2004). The purpose for "[a]warding attorney's fees to a prevailing defendant is meant to 'provide protection against unfounded suits brought by trademark owners for harassment and the like.'" Id. at 729 (citation omitted). The test for whether a Lanham Act action is oppressive "requires an objective inquiry into whether the suit was unfounded when it was brought and a subjective inquiry into the plaintiff's conduct during litigation." Id. "No one factor is determinative, and an infringement suit could be 'exceptional' for a prevailing defendant because of (1) its lack of any foundation, (2) the plaintiff's bad faith in bringing the suit, (3) the unusually vexatious and oppressive manner in which it is prosecuted, or (4) perhaps for other reasons as well." Id. (quoting National Ass'n of Prof'l Baseball Leagues, Inc. v. Very Minor Leagues, Inc., 223 F.3d 1143, 1146-47 (10th Cir.2000)). Of course, "'[w]here a plaintiff sues under a colorable, yet ultimately losing, argument, an award of attorney's fees is inappropriate.'" Id. at 728 (citation omitted).

Under the TCPA, Tenn. Code Ann. § 47-18-109(e)(2), reasonable attorney's fees and costs may be awarded by the court to the prevailing defendant "upon finding that the action is frivolous, without legal or factual merit, or brought for the purpose of harassment." Id. "As the language of the statute makes clear, even where this prerequisite is met, whether or not to award fees is discretionary with the court." Glanton v. Bob Parks Realty, No. M2003-01144-COA-R3-CV, 2005

WL 1021559, at *9 (Tenn. Ct. App. Oct. 24, 2005). Tennessee courts "do not interpret the statutory term 'without legal or factual merit' to mean without sufficient merit to prevail, but rather as so utterly lacking in an adequate factual predicate or legal ground as to make the filing of such a claim highly unlikely to succeed." Id.

According to Defendant, Plaintiff was apprised of the applicable law when, in response to Plaintiff's cease-and-desist letter, Defendant sent Plaintiff a letter outlining the law in detail. See (Docket Entry No. 40, Matthew Becker Declaration, Exhibits B and C). Further, Defendant contends that Plaintiff's suggestion on several occasions that this action might be settled, if Defendant would agree to transfer the domain name to Plaintiff reflects that Plaintiff's motive was only to force Defendant to stop using the domain name and to effectuate transfer of the domain name to Plaintiff. See id, Becker Declaration at ¶ 10; Docket Entry No. 41, Amy Everhart ¶ 9. As evidence of Plaintiff's intention to acquire Defendant's domain name or, at least, to harass Defendant because of its ownership of the domain name, Defendant cites a November 2008 trade show where Plaintiff's representatives made "derogatory" and "harassing" comments about Defendant and its use of Defendant's domain name to Defendant's representative. See Docket Entry No. 39, Defendant's memorandum, Attachment 1, Kropp Deposition at pp. 19-20.

Upon review of the record, Plaintiff began use of its www.borescopesrus.com domain name approximately four years before Defendant started using its own domain name www.borescopes.us.com. Plaintiff presented some evidence of actual confusion, resulting from the similarity of the domain names. (Docket Entry No. 35, Court's Memorandum at 3, 6). Although the Court determined that the mark was generic, the Court also stated that such determination did not preclude a passing off claim. Id. at 23. Because Plaintiff presented evidence of some confusion,

the Court examined Plaintiff's claims for likelihood of confusion under the eight factors articulated in Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc., 670 F.2d 642, 648 (6th Cir. 1982). Id. at 26-27. The Court concluded that the parties' goods and marketing channels were related and that Plaintiff presented vague instances of actual confusion. Id. at 28, 32-33. Thus, the Court concludes that Plaintiff's claims were not objectively unfounded at the time of filing its complaint.

The Court also concludes that Defendant fails to demonstrate Plaintiff's bad faith in filing this action or that its conduct was unusually vexatious or harassing. The fact that Plaintiff discussed the transfer of Defendant's domain name during settlement discussions is not indicative of bad faith, given Plaintiff's proof of actual confusion and that Defendant's Google advertisements had appeared next to or near Plaintiff's Google advertisements on search results. As to Defendant's reference to Plaintiff's "harassing" comment, Jennifer Kropp, Defendant's manager of operations, refers to a Plaintiff's salesman making "derogatory statements" about Defendant's company in a "harassing manner." (Docket Entry No. 39, Attachment 1, Kropp Deposition at pp. 19-20). The Court concludes that this evidence is conclusory and insufficient to establish harassing conduct.

The decisions cited by the Defendant warranting attorney's fees are unpersuasive, as those decisions involved factually egregious circumstances.[1] Accordingly, for these reasons, the Court

---

[1] See Glanton, 2005 WL 1021559, at *10 (complaint's failure to establish claim under the TCPA claim based upon a section that did not apply to real property, but instead prohibited conduct that was different from the conduct alleged); Alexander Realty Capital, Inc. v. Laurel Cove Development, LLC, No. 3:07-0755, 2009 WL 541340, at *10-12 (M.D. Tenn. March 4, 2009) (exercising its discretion, the district court concluded that counter-plaintiffs asserted its TCPA claim and pursued it through trial, merely to keep counter-defendants "up at night" and that the claim was frivolous as counter-plaintiffs never articulated a credible theory between the allegedly deceptive acts and the alleged damages); Rohr-Gurnee Motors, Inc. v. Patterson, No. 03 C 2493, 2004 WL 422525, at *2-3, 5 (N.D. Ill. Feb. 9, 2004) (Plaintiff's counsel recommending in a letter unless the defendant

concludes that this action was not oppressive, frivolous, or for the purpose of harassment. Thus, the Defendant is not entitled to attorney's fees and costs under either federal or state law.

An appropriate Order is filed herewith.

**ENTERED** this the _18th_ day of November, 2010.

WILLIAM J. HAYNES, JR.
United States District Judge

---

was "a woman of significant means, she may just give up the addresses without a fight or at the very least, will be beaten into submission by the cost of defending the litigation," and plaintiff continued litigation even after the court ruled at a preliminary injunction hearing that plaintiff "did not have a better than negligible chance of success on the merits of its claim"); J & J Snack Foods, Corp. v. Earthgrains Co., No. 00-6230, 2003 WL 21051711, at *1 (D. N.J. May 9, 2003) (case became exceptional when plaintiff should have known following the court's lengthy preliminary injunction opinion that plaintiff did not have sufficient evidence to succeed on the merits, yet plaintiff continued its action); Career Agents Network, Inc. v. Careeragentsnetwork.biz, No. 09-CV-12269, --- F.Supp.2d ----, 2010 WL 2632298 (E.D. Mich. June 29, 2010) (cybersquatting claim favored granting attorney's fees because it was clear defendant as a consumer was running a "gripe site" and was not a competitor, but trademark infringement claim, while weak was colorable, counseled against attorney's fees; main reason for filing action was to silence criticism as plaintiff's agents expressed little concern as to confusion; and plaintiff failed to cite controlling law in brief for TRO); San Juan Products, Inc. v. San Juan Pools of Kansas, Inc., 849 F.2d 468 (10th Cir. 1988) (specifically declining to award attorney's fees under Lanham Act, court chose to award fees under court's equitable powers, finding plaintiff was a "bully type" that filed the action to intimidate and insisted to go to trial even after discovery revelations exhibited plaintiff's potential liability); and Allergy Asthma Technology, Ltd. v. I Can Breathe, Inc., 195 F.Supp.2d 1059, 1070, 1072-73 (N.D. Ill. 2002) (considering factors such as plaintiff's willful violations of state law and that after creating a problem of its own making plaintiff asserted multiple claims despite minor potential damages even if successful, the court concluded that plaintiff's effort to punish the defendant was not "the first time that a whistleblower has ended up as the target of retaliatory action.").